J-S46037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LUZAY PIERRE WATSON | : | |
| | : | |
| Appellant | : | No. 443 WDA 2023 |

Appeal from the PCRA Order Entered March 20, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011093-2009

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED: April 10, 2024**

Luzay Pierre Watson ("Watson") appeals from the order dismissing his second petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

This Court previously provided the following factual and procedural history:

> [In May 2009], the victim, Davon Young [("Young")], dropped off [his girlfriend] Soneida Goshay [("Goshay")] at his sister, Donika Gay's [("Donika")] residence in St. Clair Village. St. Clair Village was a close knit, yet often violent, housing project community in the City of Pittsburgh, Allegheny County. Young was accompanied by Aaron Doswell [("Doswell")],[2] and Goshay was left in the company of another of Young's sisters, Nikki Gay

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[2] At some time prior to Doswell's testifying at Watson's trial, an unknown assailant shot and paralyzed him. N.T., 10/22/10, at 53.

["Nikki")],[3] who was at the residence watching Donika's two young children. Young and Doswell left the area.

* * * * *

[Later that day,] Young, Goshay, and Doswell began to leave the area with Young driving [his] silver vehicle on Cresswell Street . . . . As they drove along Cresswell Street, [Watson] pursued the vehicle on foot, getting Young's attention by yelling, "yo[,] yo[,] yo". Young recognized [Watson], stopped the car, and got out of the vehicle to speak with [Watson].

[Watson] confronted Young about the money ($500) owed to him. [Watson] became agitated by Young's lack of an appropriate response. As the argument continued[,] Blaine Revis, a relative of [Watson's], approached and handed [Watson] a semiautomatic pistol. [Watson] chambered a round and walked over to Young's vehicle, took the keys from the ignition[,] and angrily told Goshay and Doswell that he would kill all of them. He told Goshay to get out of the vehicle and "go hide". He ordered an unknown male to watch Doswell as he sat in the vehicle. Goshay left, returned to the Gay residence[,] and alerted Nikki [] that Young was in danger. Nikki Gay frantically ran toward Cresswell Street.

[Watson] again approached Young and the argument resumed. [Watson] swung at Young and missed. Young started to retaliate but apparently thought better of it because [Watson] was armed. [Watson] stepped back and pointed the gun at Young. [Watson] then shot Young multiple times, and Young collapsed to the ground. [Watson] turned to persons in the immediate area and stated, "Don't you all mother fuckers think you should be going somewhere". [Watson] fled the area disposing of the weapon as he did so. Nikki [] arrived to find her brother collapsed on the ground in an obviously life[-]threatening condition.

Young was emergently transported to a local hospital but died shortly thereafter. An autopsy indicated that Young was shot

---

[3] One month after testifying at Young's preliminary hearing, Watson's brother, at Young's behest, murdered Nikki Gay. *Commonwealth v. Watson*, 2013 WL 11267512, at *3-4 (Pa. Super. 4/23/13) (unpublished memorandum), *appeal denied*, 74 A.3d 1031 (Pa. 2013).

3–5 times with the fatal wound being a gunshot wound to the trunk.

*Commonwealth v. Watson*, 2013 WL 11267512, at *1-2 (Pa. Super. 4/23/13) (unpublished memorandum) (record citations and footnotes omitted; footnotes added), *appeal denied*, 74 A.3d 1031 (Pa. 2013).

A jury convicted Watson of first-degree murder. The trial court sentenced Watson to life in prison. This Court affirmed the judgment of sentence and the Pennsylvania Supreme Court denied leave to appeal. *See id*.

Watson filed a timely first PCRA petition, which the PCRA court denied without a hearing. This Court affirmed the dismissal of Watson's first PCRA petition and the Pennsylvania Supreme Court denied leave to appeal. *See Commonwealth v. Watson*, 2016 WL 5417416 (Pa. Super. 11/11/14) (unpublished memorandum), *appeal denied*, 165 A.3d 877 (Pa. 2017).

In February 2019, Watson filed a *pro se* PCRA petition, his second. The PCRA court appointed counsel, who filed an amended petition, attaching a signed, unnotarized "affidavit" from Anthony McWhite ("McWhite"), a fellow inmate at SCI Dallas. *See* Affidavit of Anthony McWhite, 2/14/19, at 1 (unnumbered); N.T., 11/21/22, at 4-5. In the affidavit, McWhite claimed he was present during the murder of Young and saw a drug dealer nicknamed "Bezzel" shoot and kill Young. *See* Affidavit of Anthony McWhite, 2/14/19, at 1 (unnumbered). The PCRA court held an evidentiary hearing on Watson's newly discovered evidence claim. McWhite testified to his version of the

- 3 -

events surrounding the murder of Young. *See* N.T., 11/21/22, at 3-19. McWhite admitted he was currently serving a life sentence for Bezzel's murder. *See id*. at 7.

The PCRA court subsequently issued a Rule 907 notice. Watson did not file a response. In April 2022, the PCRA court dismissed the petition. The instant, timely appeal followed.[4]

Watson raises the following issues for our review:

Did the PCRA [c]ourt err in denying Watson's PCRA [p]etition by relying primarily on evidence in the Watson trial record?

Watson's Brief at 5.

Our standard of review of an order dismissing a PCRA petition is well-settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018)

---

[4] Watson and the PCRA court complied with Pa.R.A.P. 1925.

(internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

We must initially determine whether the PCRA court had jurisdiction to adjudicate Watson's petition. Under the PCRA, any petition "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1).[5] The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. **See Commonwealth v. Albrecht**, 994 A.2d 1091, 1093 (Pa. 2010). Pennsylvania courts may nevertheless consider an untimely PCRA petition if the petitioner can plead and prove one of three exceptions set forth in section 9545(b)(1)(i)-(iii).

Watson's judgment of sentence became final on December 11, 2013, when ninety days passed from the date the Pennsylvania Supreme Court denied leave to appeal and Watson did not file a petition for a writ of *certiorari* with the United States Supreme Court. **See** 42 Pa.C.S.A. § 9545(b)(3); **see also** U.S.Sup.Ct.R. 13 (stating an appellant must file petition for writ of

---

[5] A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

*certiorari* with the United States Supreme Court within ninety days after entry of judgment by state court of last resort).  Accordingly, Watson had until December 11, 2014, to file a timely PCRA petition.  **See** 42 Pa.C.S.A. § 9545(b)(1).  Watson's second PCRA petition, filed in February 2019, is facially untimely.

However, Watson contends his claim falls within the newly discovered fact exception to the PCRA's timeliness requirements.  **See** 42 Pa.C.S.A. § 9545(b)(1)(ii);[6] **see also** Watson's Brief at 20-26.  The Pennsylvania Supreme Court has repeatedly stated it is the appellant's burden to plead and prove one of the above-enumerated exceptions applies.  **See, e.g.**, **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008).

This Court has previously explained the interplay between the newly discovered facts exception to the PCRA's timeliness requirements and a substantive claim of after-discovered evidence as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence.  Due diligence demands that the petitioner take reasonable steps to protect his own interests.  A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence.  This rule is strictly enforced.  Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

---

[6] "[t]he facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]"  42 Pa.C.S.A. § 9545(b)(1)(ii).

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, *inter alia*, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced). In other words, the "new facts" exception at:

> [S]ubsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the **facts** upon which the claim was predicated were **unknown** and 2) could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

Thus, the "new facts" exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176–177 (Pa. Super. 2015) (footnote, some citations and quotation marks omitted, emphases in original).

Watson contends he first met McWhite in December 2018 and learned he allegedly witnessed the murder in May 2009. *See* Amended PCRA Petition, 3/7/22, at 7-8. Watson obtained an "affidavit" from McWhite and filed his second PCRA petition in February 2019. *See id*. Watson alleges he could not

have discovered McWhite's evidence any earlier, as he did not know McWhite before their joint incarceration and was unaware he was a potential witness to the murder. *See id*.; *see also* N.T., 11/21/22, at 4, 19-21.

McWhite claimed he drove to the scene in a silver Impala to buy drugs for his mother from "Bezzel" (Shawntez Weems). *See id*. at 5, 11-12. He contends he and Bezzel were talking when Young's silver car stopped in front of his. *See id*. at 11-13. McWhite stated Bezzel argued with Young, eventually shooting him in the back. *See id*. at 6-7, 13-15. McWhite averred he fled the scene when the shooting started. *See id*. at 14-15. McWhite testified he later murdered Bezzel, fearing Bezzel would kill him because he witnessed Young's murder. *See id*. at 14-16. McWhite maintained he waited over nine years to come forward with this information because he did not want to get involved and did not want to be retaliated against because he was a snitch. *See id*. at 15.

The PCRA court addressed the claim regarding the new information supplied by McWhite on the merits as a claim of after-discovered evidence. *See* PCRA Court Opinion, 2/6/23, at 5-6. It failed to address the preliminary, jurisdictional issue of whether Watson had satisfied the timeliness requirements of 42 Pa.C.S.A. § 9545(b)(1)(ii), namely the assertion of newly discovered facts with due diligence. *See id*. Because the PCRA's timeliness requirements are jurisdictional, the PCRA court erred by addressing the merits

of Watson's claim without first addressing its timeliness. ***See Albrecht***, 994 A.2d at 1093.

Our review of the record demonstrates Watson has not shown he exercised due diligence in obtaining this information. Accordingly, we affirm the PCRA court's decision, although on different grounds than the court relied upon. ***See Commonwealth v. Elliott***, 249 A.3d 1190, 1193 n. 3 (Pa. Super. 2021), ("It is well-settled that this Court may affirm the decision of the [trial] [c]ourt if it is correct on any basis.") (citations and internal quotation marks omitted).

At the PCRA hearing, Watson testified he was present during Young's murder. ***See*** N.T., 11/21/22, at 19-20. Watson's trial defense was that the prosecution's eyewitnesses, who were either related to Young or Watson, "had motivation to lie," or were "simply mistake[n]." N.T., 10/22/10, at 52. Watson also claimed the police investigation was sloppy. ***See id***. at 53. Moreover, Watson argued the possible guilt of Young's female cousin who, he said, threatened Young on the day of the murder because Young also owed her money. ***See id***. at 55; ***Commonwealth v. Watson***, 2013 WL 11267512, at *1. Thus, McWhite's testimony, as a neutral third party, would have been critical to Watson's defense.

Notably, Watson does not allege he told anyone he saw someone else murdered Young or that, immediately prior to the murder, the alleged murderer spoke to a person in a silver car, who was parked "bumper to

bumper" with Young's vehicle, and who "flew down the street" in his haste to leave the scene, as McWhite claimed. N.T., 11/21/22, at 6-7; 12-15; 19-20; *see also* Amended PCRA Petition, 3/7/22, at 7-8. Certainly, due diligence would require, at the least, that Watson, who admitted to being present at the time of the murder and would therefore have seen McWhite even if he did not know his name, to make *some* effort to inform trial counsel[7] or first PCRA counsel of the existence of this potential witness and, in the more than nine years between the murder and his second PCRA petition, make *some* effort to locate McWhite. "A petitioner must . . . explain why his asserted facts could not have been ascertained earlier with the exercise of due diligence." *Commonwealth v. Taylor*, 933 A.2d 1035, 1041 (Pa. Super. 2007) (citation omitted). Here, Watson has not offered any explanation for his failure to inform anyone of another possible witness to the murder who could have exonerated him, or to make any attempt to locate that person. Thus, Watson failed to show he complied with the due diligence requirement of 42 Pa.C.S.A. § 9545(b)(1)(ii). *See id*. at 1041; *see also Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001) (rejecting attempt to invoke section 9545(b)(1)(ii) because appellant failed to offer any evidence, he exercised due diligence in

---

[7] In his first PCRA petition, Watson claimed trial counsel was ineffective, but did not claim counsel was ineffective for failing to investigate a possible defense or failing to try to locate any witnesses. *See Commonwealth v. Watson*, 2016 WL 5417416, at *2.

obtaining facts upon which his claim was based). Watson's claim does not merit relief and the PCRA court did not err in denying relief.[8]

Accordingly, we affirm the denial of Appellant's PCRA petition.

Order affirmed.

_____

[8] Even if we were to conclude Watson had exercised due diligence, he would not be entitled to relief. The PCRA court found Watson had not shown White's affidavit was "outcome determinative" and thus Watson had not demonstrated he met the criteria for a new trial based on after-discovered evidence. *See* PCRA Court Opinion, 2/6/23, at 5. The PCRA court explained it found McWhite's testimony lacked credibility because McWhite took no action for almost a decade, and only did so when he and Watson were imprisoned together, and the alleged real killer was someone he murdered. *See id*. The PCRA court also concluded the petition failed to satisfy the requirement that newly discovered evidence be potentially outcome-determinative because Watson's brother murdered, the victim's cousin, Nikki Gay, four weeks after her preliminary hearing testimony, and the trial evidence included recorded jail conversations Watson had with his friends and relatives about eliminating potential trial witnesses. The PCRA court found Watson's actions "clearly established a consciousness of guilt surrounding the murder of [Young]. Additionally, at trial multiple witnesses testified which established [Watson's] motive, state of mind, and conduct to the satisfaction of the jury who ultimately convicted him of first-degree murder." *Id*.

Based on our review, we conclude the PCRA court's decision is supported by the record, and we discern no basis upon which to disturb the PCRA court's credibility determination. *See Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/10/2024